676 A.2d 226

COMMONWEALTH of Pennsylvania, Appellee,

v.

Patricia MELENDEZ, Appellant.

Supreme Court of Pennsylvania.

Argued Dec. 4, 1995.

Decided May 22, 1996.

Leonard N. Sosnov, Philadelphia, for Patricia Melendez.

Catherine Marshall, Joan Weiner, Philadelphia, for Com.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY and CASTILLE, JJ.

*OPINION OF THE COURT*

FLAHERTY, Justice.

Patricia Melendez was convicted by a jury of possession of cocaine with intent to deliver and possession of drug paraphernalia in violation of the Controlled Substance, Drug, Device and Cosmetic Act,[1] criminal conspiracy,[2] and violation of the Uniform Firearms Act.[3] She was sentenced to eleven and one half years to twenty-three years in prison. On appeal, Superior Court affirmed the convictions, with one judge dissenting. We granted allocatur in order to address Melendez's claims that police conducted improper searches and seizures of inculpatory evidence which should have been suppressed at trial.

On November 9, 1990 Philadelphia police began a surveillance of 5155 Pennway Street. This was the culmination of a three-week investigation into possible drug activity at this address. Police at the scene were in communication with an officer at another location who was typing up an application for a search warrant of the premises. About an hour after the surveillance began, Melendez left the house on Pennway Street, got in an automobile, and drove away. Police then stopped her, removed her from the car, and searched her purse, where they found a .25 caliber handgun, a large amount of cash, and what police describe as a drug tally sales sheet.

Police had observed no criminal activity on the part of Melendez, but stopped and searched her because she was a suspect in a felony investigation. Police then transported Melendez back to her house, where they used her keys to gain entrance. Upon entering the house, police observed Melendez's co-defendant holding a bag of cocaine. Police then secured the house and its occupants and waited for communication as to whether or not the search warrant had been approved. For approximately an hour, police waited at the

---

1. 35 Pa.C.S. § 780-113.

2. 18 Pa.C.S. § 903.

3. 18 Pa.C.S. §§ 6106 and 6108.

scene with both occupants of the dwelling, but did not conduct a search. Finally, the warrant arrived and they searched the house, finding drugs, cash and other evidence which was used to obtain the convictions.

Although Melendez raises a number of issues, because of our disposition of the case, we limit our discussion to the questions of whether under the United States and Pennsylvania constitutions (1) Melendez was improperly stopped and searched, requiring suppression of any evidence seized as a result of the search and (2) whether the warrantless entry of Melendez's home was illegal, requiring the suppression of evidence seized from the home. We answer both questions in the affirmative.

The Pennsylvania Constitution provides:

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Art. I, Sec. 8. The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const.Amend. 4. Under both federal and state provisions, people are to be secure in their persons against "unreasonable searches and seizures." The issue in the first instance is whether Melendez was unreasonably stopped and searched when she attempted to drive away from her residence.

In *Commonwealth v. Rodriquez*, 532 Pa. 62, 71, 614 A.2d 1378, 1382 (1992), this court stated:

In accordance with the protections afforded our citizens under Article I, Section 8, we have recognized only two instances where police may "seize" an individual[;] both

require an appropriate showing of antecedent justification: first, an arrest based upon probable cause, *Commonwealth v. Duncan*, 514 Pa. 395, 525 A.2d 1177 (1987); second, a 'stop and frisk' based upon reasonable suspicion, *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969).

In sum, there are two circumstances in which warrantless seizures of a person are constitutionally permissible. The first is where police have probable cause to believe that a crime is being or is about to be committed. The second is that a limited seizure may be effected where there is a reasonable police belief that criminal activity is afoot. *Hicks*, 434 Pa. at 160, 253 A.2d at 279, interpreting *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

In this case, Melendez was not engaged in any activity at the time she was stopped which would cause a person of reasonable caution to believe that she was then engaged in criminal conduct.[4] The brief for the Commonwealth concedes that detectives stopped Melendez because "if the suspect was at large when the impending search warrant was executed she might never be apprehended." The fact that Melendez might avoid arrest, however, does not constitute probable cause to arrest her, for at that point, there was no probable cause to believe that Melendez was committing or about to commit a crime.

The remaining possibility for a legal seizure of the person of Melendez is that the stop constituted a stop and frisk under the *Terry–Hicks* line of cases. However, unless police have "specific and articulable facts" which lead them to suspect criminal activity, *Terry v. Ohio*, 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906, they may not stop and search any person without a warrant. Since the Commonwealth offers no

4. Probable cause has been described as occurring where the facts and circumstances within the officer's knowledge and of which he has trustworthy information are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. *Berger v. New York*, 388 U.S. 41, 55, 87 S.Ct. 1873, 1881–82, 18 L.Ed.2d 1040, 1050 (1967).

"specific and articulable facts" here, there was no justification for even the limited intrusion of a *Terry* stop.[5]

In an apparent attempt to avoid this conclusion, the trial court stated that "police stopped Ms. Melendez for investigation...." However, the "investigation" rationale does not supply the articulable-basis-for-suspicion requirement of *Hicks* and *Terry*. No person may be stopped for "investigation" in the absence of an articulable reason to suspect criminal activity, and the record contains no indication that police had any basis to believe that Melendez was engaged in any criminal activity at the time of the stop. Instead, police had only the suspicion that Melendez was involved in illegal drug sales at a time and location wholly separate from the place she was stopped. *Terry* stops, however, are designed to address immediate suspicions of current illegal conduct.[6] Concerns that Melendez may have been engaged in illegal activity in her home were properly addressed by the application for a search warrant and provide no basis for a *Terry* stop.[7]

Superior Court justified the warrantless stop and search in this case by reference to "exigent circumstances." Making reference to *Commonwealth v. Peterson*, 408 Pa.Super. 22, 596

5. If, on the other hand, police have articulable and reasonable suspicion of criminal activity, they may conduct a brief investigatory stop for the purpose of learning what they can, and during the course of this stop, should they be reasonably concerned for their safety, they may conduct a pat-down of the suspect's outer garments for weapons. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). It is always uncertain what may be learned from a *Terry* stop, however, for there is no requirement that the person stopped answer any questions which are put to him, and in that event, the police are without authority to do more than make their presence known and, if appropriate, conduct a surveillance of the suspected activity.

6. The *Terry* situation concerns "necessarily swift action predicated upon the on-the-spot observations of the officer on the beat...." *Terry v. Ohio*, 392 U.S. at 20, 88 S.Ct. at 1879, 20 L.Ed.2d at 905.

7. In *Commonwealth v. Rodriquez*, 532 Pa. 62, 614 A.2d 1378 (1992) and in *Commonwealth v. Lovette*, 498 Pa. 665, 450 A.2d 975 (1982), this court rejected attempts by the Commonwealth to erode the boundaries of the *Terry* exception to probable cause requirements so as to permit "investigation" stops or police seizures which are intended to "freeze" the situation.

A.2d 172 (1991), Superior Court stated the applicable law as follows:

> It is well-settled that exigent circumstances excusing the warrant requirement arise where the need for prompt police action is imperative.... Whether exigent circumstances exist depends on an examination of all of the surrounding circumstances in a particular case.... [T]he inherent necessities of the situation at the time must be scrutinized.

Slip Op. at 10. Superior Court then proceeded to determine that the present case involved exigent circumstances:

> failure to halt the vehicle of appellant and detain her would have set the stage for her to return to the premises during the execution of the search warrant, observe the police activity at the premises, and been thereby impelled to flight.... Similar exigent circumstances justified the warrantless entry of the residence of appellant since the failure of appellant to arrive at her destination at a particular time or within a particular period could well have set in motion, by pre-arrangement among the conspirators or by happenstance, circumstances which her co-defendant would have viewed as so untoward as to necessitate destruction or removal of contraband from the scene.

Slip Op. at 11. Although Superior Court finds the exigencies of this case "quite compelling," we disagree.

Our disagreement with Superior Court's determination that exigent circumstances justified the search is based on our view that there was no "imperative" need for police action in this case. There is no evidence of record that any of the "untoward" eventualities Superior Court mentions actually existed, and if the police created a danger that their surveillance might be discovered because they stopped Melendez's car, they can hardly be allowed to rely on that to justify a warrantless intrusion. Had the police simply waited for the search warrant, they could have searched the dwelling and avoided the problems of the present case. Had contraband been found during the search, police then could have arrested Melendez on the basis of this evidence. There were no exigent circumstances.

In sum, the stop, and therefore the search, were illegal, for the stop was grounded neither on probable cause nor the less stringent requirements of *Terry,* and the warrant requirement was not obviated by the existence of exigent circumstances. It is our conclusion, therefore, that the items seized and introduced into evidence must be suppressed under Art. I, Sec. 8 of the Pennsylvania Constitution.

Next we address the claim that the search of the premises was illegal. Superior Court justified the search because Melendez consented to return with the police to her home and to their using her keys to open the door and enter. Even if Melendez had not given her consent, according to Superior Court, "exigent circumstances" were such that the police would have been authorized to enter anyway. Moreover, even if there were no exigent circumstances, the evidence seized at the residence would have been admissible under the "inevitable discovery rule."

We address these assertions seriatim. After police stopped Melendez, they told her they were getting a search warrant for her house and asked her to go there with them. There is no evidence of record that she consented to accompany police or to have them enter her house.

In *Commonwealth v. Davenport,* this court stated:

> In *Bumper v. North Carolina,* 391 U.S. 543, 548–9 [88 S.Ct. 1788, 1791–2] 20 L.Ed.2d 797, 802 (1968), the Supreme Court of the United States held that "[w]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority."

453 Pa. 235, 241–42, 308 A.2d 85, 88–89 (1973). In this case, Melendez was not informed of her right to refuse to accompany police or her right to refuse their entry into her house. Clearly, she waived nothing, and she *certainly* did not freely

and voluntarily consent to the police entry into her house. Superior Court's determination of consent is in error.[8]

Next, Superior Court asserts the presence of exigent circumstances. There is some dispute as to where police stopped Melendez. The trial court found that it was several blocks from her home and the Commonwealth asserts that it was in her driveway. Our view is that it does not matter where police stopped her. If the concern was that police activity might have been witnessed by a person remaining in the house who might begin to destroy evidence, such a possibility is of no legal consequence, for police may not create their own exigencies, which they then use as justification for exclusion from normal warrant requirements.

Finally, Superior Court held that even if circumstances were not exigent, the evidence seized at the house would have been admissible under the "inevitable discovery" rule. In *Commonwealth v. Mason*, 535 Pa. 560, 565, 637 A.2d 251, 253 (1993), we discussed both the inevitable discovery rule and its relation to the Pennsylvania Constitution. The inevitable discovery rule, sometimes referred to as the "independent source rule," is that if the prosecution can demonstrate that the evidence in question was procured from an independent origin, such evidence is admissible.

In *Mason* police officers were conducting a surveillance of an apartment as a suspected site of illegal drug sales. They arranged for an undercover officer to purchase cocaine from

---

**8.** The Commonwealth attempts to meet its burden of proving consent to enter the house by arguing that "there is no evidence that [Melendez] would not have been free to go if she had opted to decline [the police] request to return to the house. The record demonstrates *only* that defendant was asked to do something under non-threatening circumstances, and she agreed to do it." Brief at 15. (emphasis in original.)

However, the Commonwealth had earlier conceded that Melendez was stopped because otherwise she might never be apprehended, Brief at 4. If she was stopped in order to prevent escape, she was not free to go, and if she was not free to go, absent an express consent, her conduct can only be regarded as acquiescence. There is nothing of record to indicate express consent. It is our view, therefore, that the Commonwealth has not met its burden of demonstrating that Melendez consented rather than merely acquiesced.

an intermediary, who purchased his cocaine from persons in the apartment. After the intermediary delivered the cocaine to a police informant, he was arrested several blocks from the apartment. The intermediary told the police that occupants of the apartment sold him cocaine and were conducting other drug transactions in the apartment. Police then applied for a search warrant based on this information and their surveillance, but before an officer returned with the warrant, officers who remained near the apartment battered down the door. They were concerned that word of the intermediary's arrest might be communicated to occupants of the apartment, who would then destroy evidence of criminal activity.

We rejected the police claim that exigent circumstances justified the warrantless entry. The asserted exigency was that evidence of criminal activity might be destroyed if police were not permitted to enter without a warrant and secure the premises until they learned whether a warrant had been issued. Our view, however, was that mere speculation that evidence may be destroyed because suspects may learn of police activity is inadequate to justify a warrantless entry, and in any event, police may not bootstrap themselves into exigencies by their own conduct.

In *Mason* we held that "where police seize evidence in the absence of a warrant or exigent circumstances by forcibly entering a dwelling place, their act constitutes a violation of Article I, Section 8 of the Pennsylvania Constitution...." 535 Pa. at 571, 637 A.2d at 257. We acknowledged that the independent source rule had been applied in Pennsylvania, but we emphasized that its application has been limited. Further, we observed that our past cases have made it clear that we place a greater importance on privacy under the Pennsylvania Constitution than have recent federal cases under the United States Constitution, and we noted that the facts in *Mason* were importantly different from the facts in previous independent source cases in that they involved the invasion of a dwelling place.

334

■ Our emphasis on the importance of privacy in Pennsylvania jurisprudence and the fact that the illegal police invasion was of a home left open the question of whether *Mason* was to be understood as requiring an absolute exclusion of evidence which was illegally seized in warrantless police intrusions of a home, or whether the illegally seized evidence might be salvaged through exceptions to the warrant requirement such as the independent source rule.

Today we resolve that question and clarify *Mason* by holding that such illegally seized evidence may be admitted into evidence through exceptions to the warrant requirement such as the independent source rule. However, although the independent source rule would allow for the admission of illegally seized evidence, it has no application in this case.

■ Mr. Justice Cappy, concurring in *Mason*, voiced a concern that unless the independent source doctrine was more firmly limited than we had done in *Mason*, police officers would be likely to believe that if they first requested a warrant, they could then conduct an illegal entry and escape suppression of the evidence which they would later seize pursuant to the warrant. It would appear that his concern was well founded, and we hereby adopt the limitation of the independent source rule which Mr. Justice Cappy proposed in *Mason*:

> [A]pplication of the "independent source doctrine" is proper only in the very limited circumstances where the "independent source" is *truly independent from both the tainted evidence and the police or investigative team which engaged in the misconduct by which the tainted evidence was discovered.*

535 Pa. at 573, 637 A.2d at 257–58 (emphasis in original). Applying this rule to the present case, there is no source of the evidence in question that is "truly independent" of either the tainted evidence or the police who engaged in the misconduct. The evidence must, therefore, be suppressed.

The Pennsylvania Constitution does not allow police intrusions exemplified by this case and *Mason*. Government

agents may not enter private dwellings through the use of battering rams as in *Mason*, or by effecting illegal stops and seizures as in this case, and secure the premises by detaining those who occupy the premises while police wait to learn whether their application for a warrant has been approved. It is difficult to imagine practices more inimical to the fundamental idea that no person shall be subject to unreasonable searches and seizures.

Judgment of Superior Court is reversed.

CAPPY, J., files a concurring opinion which is joined by ZAPPALA, J.

CASTILLE, J., files a dissenting opinion.

CAPPY, Justice, concurring.

I join the excellent majority opinion authored by my learned colleague Mr. Justice Flaherty. However, I am constrained to write separately in order to emphasize my continued disagreement with this Court's decision in *Commonwealth v. Cruz*, 538 Pa. 550, 649 A.2d 657 (1994), Zappala, J. and Cappy, J. noting a dissent, the companion case in this matter.

Cruz was a visitor in the Melendez home who, as a result of the search and seizure deemed to be illegal by this Court, was convicted and sentenced for possession with intent to deliver the same controlled substances now being suppressed in this case. *Commonwealth v. Cruz*, 432 Pa. Super 683, 635 A.2d 201 (1993) (Mem.) This Court has reached the anomalous conclusion that the constitutional rights of Melendez, the focus of the search warrant and the owner of the house searched, have been violated, while it has previously denied relief to Cruz who was a guest in that very same house. As I indicated by noting my dissent to the decision to dismiss the Cruz appeal as having been improvidently granted, that decision was wrong then; it is wrong now. The injustice suffered by Cruz as a result of this Court's inconsistency is, for lack of a better word, shameful.

ZAPPALA, J., joins this concurring opinion.

CASTILLE, Justice, dissenting.

The majority opinion here holds that the "independent source" rule cannot prevent the suppression of allegedly tainted evidence [1] seized from appellant's house because the source of the evidence in question was neither independent of the tainted evidence nor independent of the police or investigative team's action which entered appellant's house without a warrant for the purpose of detaining those present in the house and preventing destruction of evidence until the application for a search warrant was approved by a neutral authority. The majority makes this holding even though the alleged tainted evidence in this case was seized pursuant to a valid search warrant obtained without reference to any of the evidence observed by the police or from any information obtained by the police during the illegal entry into appellant's house. I find that such a holding ignores the circumstances surrounding this search and the purpose of the independent source rule. Accordingly, because I believe that the majority's holding ignores the independent source rule, I must dissent.

It is well established that the "independent source" rule applies in Pennsylvania. *See Commonwealth v. Mason,* 535 Pa. 560, 565–66, 637 A.2d 251, 254 (1993); *Commonwealth v. Brundidge,* 533 Pa. 167, 174–75, 620 A.2d 1115, 1119 (1993). As this Court stated in *Commonwealth v. Melilli,* 521 Pa. 405, 555 A.2d 1254 (1989): "[I]f the prosecution can demonstrate that the allegedly tainted evidence was procured from an independent origin—a means other than the tainted sources— the evidence will be admissible." *Id.* at 421, 555 A.2d at 1262. Thus, this Court has held that evidence is admissible under the independent source rule, in spite of illegal conduct by the police, if the police decision to seek a search warrant was not

1. The evidence found and seized during the search of appellant's clothes closet was a shoe box covered with handwritten recordings of drug transactions, nine thousand dollars ($9,000) in cash, and a holster with a loaded gun. In the middle bedroom, which was occupied by Julio Cruz (see Mr. Justice Cappy's concurring opinion), the police found twelve (12) grams of cocaine, 214 grams of marijuana and a pager. In the kitchen, the police found four (4) ounces of cocaine in one drawer and a full kilo of cocaine in another. The police also found a digital scale, a candle to hot seal plastic packets, and sealing tape.

prompted by what they observed during their initial illegal entry and that none of the information obtained during that illegal entry affected the court's decision to issue a search warrant. *Brundidge, supra* at 176, 620 A.2d at 1119.

In the case *sub judice,* the police may have misjudged the existence of sufficient probable cause or exigent circumstances to justify the stop of appellant's automobile or their warrantless entry into the house. However, there is nothing of record to suggest that the police undertook these actions to attempt to discover if there was anything of evidentiary nature in the house for which to obtain a warrant, or in order to obtain information that they could then use as probable cause in securing a warrant. Rather, the record shows that none of the information included in the warrant was either derived from or related to the initial entry into or the occupation of appellant's house.[2] The record also shows that the information used to obtain the warrant came from sources wholly unconnected with the entry and which was known to the police well before their initial entry into the house. Moreover, the record shows that the police did not search for any evidence in appellant's house until *after* they were informed that the warrant had been signed. Thus, the valid search warrant in this case was sufficiently independent of the entry to purge the evidence from any taint arising from the initial warrantless entry into appellant's house. As there was no causal link between the illegal entry and the discovery of the evidence seized from the house, I find no error in the Superior Court's affirmance of the trial court's refusal to suppress this evidence.

Affirmance of the refusal to suppress the evidence seized from appellant's house is also supported by the purpose behind the establishment of the independent source rule. In *Murray v. United States,* 487 U.S. 533, 108 S.Ct. 2529, 101

2. The only factor from the initial stop and warrantless entry referenced in the affidavit of probable cause was that appellant was being detained while the warrant was being processed. However, this information was not essential to the issuance of the warrant since the affidavit details drug transactions undertaken by a confidential informant that occurred before either the stop or warrantless entry.

L.Ed.2d 472 (1988), the plurality of the United States Supreme Court noted that the independent source rule developed as a corollary to the exclusionary rule because:

[T]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse position, that they would have been in if no police error or misconduct had occurred ... When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation.

*Id.* at 537, 108 S.Ct. at 2533, *quoting Nix v. Williams,* 467 U.S. 431, 443, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). As described above, I believe that the evidence seized from appellant's house should be admissible under the independent source rule. To hold otherwise would be contrary to the purpose of the independent source rule, for it would put the police in a worse position than they would have occupied if no illegal entry had occurred.

The majority limits the scope of the independent source rule and places the police in a worse position under the guise of protecting citizens from the possibility that police might engage in misconduct knowing that they can escape suppression because they requested a warrant before their illegal entry. I believe such a limitation is unwise since I view the incentives for the police to engage in such conduct differently. The police would be foolish to consistently enter premises illegally since it will increase their burden of convincing a court that no information gained from the illegal entry affected either their decision to seek a warrant or the decision of the district justice to grant the warrant. Nor would illegal entry by the police be wise since whatever was observed during the illegal entry could not be used to establish probable cause in seeking a warrant.

In sum, the majority's failure to find the existence of an independent source in this case effectively operates to greatly curtail the independent source rule in this Commonwealth. I

cannot agree to that since it would inexplicably afford criminals in Pennsylvania greater protection than that afforded criminals in other jurisdictions. Accordingly, I respectfully dissent and would affirm the order of the Superior Court.