COMMONWEALTH of Pennsylvania,
Appellant,

v.

Terry L. SHAFFER, Appellee.

Superior Court of Pennsylvania.

Argued Oct. 29, 1997.
Filed May 29, 1998.
Reargument Denied July 30, 1998.

William R. Scullion, Assistant District Attorney, York, for Com., appellant.

Victor A. Neubaum, Jr., York, for appellee.

Before FORD ELLIOTT, EAKIN and OLSZEWSKI, JJ.

EAKIN, Judge:

The Commonwealth of Pennsylvania appeals from the order granting Shaffer's motion to suppress evidence. We affirm.

On September 30, 1995, Officer Kevin Romine of the Northern York County Regional Police Department arrived at a one-car crash scene on Harmony Grove Road in Dover Township; the driver, appellee Terry Shaffer, was being treated by paramedics for

injuries sustained in the crash. Officer Romine developed sufficient probable cause to believe Shaffer had driven while under the influence of alcohol and placed him under arrest. He advised Shaffer of the implied consent law as set forth in 75 Pa.C.S. § 1547, and Shaffer agreed to have blood drawn for a test.

Shaffer was taken by ambulance to York Hospital for further treatment. At the direction of his superior officers, Officer Romine did not accompany Shaffer to the hospital; consequently, no blood was drawn pursuant to a request from the officer. Blood was drawn from Shaffer, but this was routinely done by the hospital for medical purposes. Without obtaining a search warrant, Officer Romine subsequently requested and received the test results from the hospital, which revealed a blood-alcohol content of .18 percent.

Shaffer was charged with driving under the influence of alcohol and careless driving. On April 15, 1996, he filed an omnibus pre-trial motion seeking to suppress the test results, alleging their warrantless seizure was in violation of Article I, Section 8 of the Pennsylvania Constitution. The suppression court denied the motion and the case proceeded to trial. Shaffer was found guilty and was sentenced to prison.

On June 28, 1996, Shaffer filed a post-sentence motion arguing the court improperly refused to suppress the test results. The trial court agreed, granted Shaffer a new trial and suppressed the test results. This appeal followed, wherein the Commonwealth raises the following issue:

> WHETHER THE TRIAL COURT ERRED IN SUPPRESSING THE BLOOD-ALCOHOL TEST RESULTS WHERE THERE WAS PROBABLE CAUSE TO BELIEVE APPELLEE OPERATED A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOL, WHERE MEDICAL BLOOD TEST RESULTS WERE OBTAINED WITHOUT A SEARCH WARRANT AFTER APPELLEE HAD CONSENTED TO A BLOOD TEST PURSUANT TO THE IMPLIED CONSENT LAW?

■ Where the factual findings of a suppression court are supported by the record, we will reverse only if the legal conclusions drawn from those facts are erroneous. *Commonwealth v. Fox*, 697 A.2d 995, 996 (1997) (citations omitted). The facts here are not disputed. There is no issue before us as to the taking or testing; this happened without governmental action. It is only the legal conclusion concerning release of the results, the search of medical records, which is challenged. The trial court found a violation of Shaffer's rights under Article I, Section 8 when police obtained the test results from his medical records without a search warrant. The Commonwealth contends this legal conclusion is wrong, based on the probable cause and Shaffer's consent.

■ In cases such as this, two types of searches may occur: the search of the blood, and the search of the medical records containing the results of the first search. *Commonwealth v. Riedel*, 539 Pa. 172, 180, 651 A.2d 135, 139–140 (1994). Shaffer consented to (or more properly, declined to refuse) the former, a search of his blood, requested under the implied consent provisions of 75 Pa. C.S. 1547. That search never happened. His blood was drawn and tested without regard to his consent or the existence of probable cause. While the search to which appellee consented would have also permitted the warrantless release of the results, such a search never took place. That it *could* have happened does not authorize the warrantless second search of records for test results unrelated to Section 1547 or Shaffer's consent. As appellee did not consent to the second search, the consent portion of the Commonwealth's argument fails.

In examining the privacy rights of citizens of Pennsylvania in their medical records, we recently explained in *Commonwealth v. Barton*, 456 Pa.Super. 290, 690 A.2d 293 (1997), *alloc. denied*, 549 Pa. 695, 700 A.2d 437 (1997),

> [t]he protection of Article I, § 8 extends to those areas where one has a reasonable expectation of privacy. The courts of this Commonwealth have continued to recognize that the citizens of Pennsylvania have a reasonable expectation of privacy in their

medical records. We note, however, that ... this privacy interest does not preclude all searches and seizures of medical records. "[T]he proper function of Art. I, § 8 of the Pennsylvania Constitution, is 'to constrain, not against *all* intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner.'" Therefore, [this] privacy interest is subject to reasonable searches and seizures.

*Id.* at 294–95, 690 A.2d at 296 (citations omitted)(emphasis in original).

■■■ Generally, a search is not deemed reasonable under Article I, Section 8 unless conducted pursuant to a valid warrant issued by a magistrate upon a showing of probable cause. *Commonwealth v. Kohl*, 532 Pa. 152, 166, 615 A.2d 308, 315 (1992). However, Section 1547 provides an exception. This section provides, in pertinent part:

§ 1547. **Chemical testing to determine amount of alcohol or controlled substance.**

(a) **General rule.** – Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purposes of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both;

75 Pa.C.S. § 1547(a)(1). "[R]easonable grounds" has been interpreted to mean probable cause. *Barton* at 295, 690 A.2d at 296. If probable cause has been established, the fact the statute does not require a warrant does not render the blood, breath, or urine tests unreasonable under the Pennsylvania Constitution. *Kohl* at 166, 615 A.2d at 308. While most testing is done directly by the police (such that no "second search" of records happens), if testing under this statute is performed by medical personnel, the results

shall be released to police. 75 Pa.C.S. 1547(j).

Section 3755 of the Vehicle Code also provides for warrantless testing and release of results, but in different and much more specific circumstances:

§ 3755. **Reports by emergency room personnel**

(a) **General Rule.** – If, as a result of a motor vehicle accident, the person who drove, operated or was in actual physical control of the movement of any involved motor vehicle requires medical treatment in an emergency room of a hospital and if probable cause exists to believe a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) was involved, the emergency room physician or his designee shall promptly take blood samples from those persons and transmit them within 24 hours for testing to the Department of Health or a clinical laboratory licensed and approved by the Department of Health and specifically designated for this purpose. This section shall be applicable to all injured occupants who were capable of motor vehicle operation if the operator or person in actual physical control of the movement of the motor vehicle cannot be determined. Test results shall be released upon request of the person tested, his attorney, his physician or governmental officials or agencies.

75 Pa.C.S. § 3755(a).

"Our courts have found that, together, sections 1547 and 3755 comprise a statutory scheme which, under particular circumstances, not only imply the consent of a driver to undergo chemical or blood tests, but also require hospital personnel to withdraw blood from a person, and release the test results, at the request of a police officer who has probable cause to believe the person was operating a vehicle while under the influence." *Barton* at 296, 690 A.2d at 296; *Riedel* at 180, 651 A.2d at 139–140; *Commonwealth v. Hipp*, 380 Pa.Super. 345, 355, 551 A.2d 1086, 1090 (1988).

■■■ This case involves the compliance with this statutory scheme, and the question unanswered in *Riedel, supra* and *Barton,*

*supra*: given the existence of probable cause, is a warrantless search of medical records for blood-alcohol test results permitted under the Pennsylvania Constitution, absent an officer's request for testing [1]?

In *Riedel*, the accused was taken to the hospital after a crash; his blood was drawn and tested for medical purposes. Upon learning of this, the officer never requested additional blood be drawn or tested, and subsequently wrote the hospital requesting the results of their test; as herein, the search of the blood was not done at the officer's request, so that search was not at issue. Riedel made a Fourth Amendment challenge to the warrantless search of his medical records. Our Supreme Court held there was no Fourth Amendment violation as, under the implied consent law, an officer with sufficient probable cause to request a blood test could ask for and obtain the results of a medical blood test, even though the officer failed to verbalize a test withdrawal request to hospital personnel. *Riedel* at 179, 651 A.2d at 139. The Court reasoned that "[t]he litmus test under section 3755 is *probable cause* to request a blood test, not the request itself." *Id.* at 182, 651 A.2d at 140 (emphasis in original).

Three Justices joined in a Concurring Opinion, suggested a different result would have obtained if the accused had raised Article I, Section 8 of the Pennsylvania Constitution. The concurring Justices observed:

> samples for testing from a person who requires medical treatment when probable cause exists to believe that the person was operating a vehicle under the influence of alcohol. 75 Pa.C.S.A. § 3755(a). When such a request is made, the hospital personnel have an affirmative duty to obtain the blood samples and to transmit them for blood alcohol content testing. The test results are released upon request of the person tested, his attorney, his physician,

or governmental officials or agencies. When a police officer fails to follow this procedure *and fails to request that blood samples be drawn,* the statute does not authorize the officer to obtain medical records of a person suspected of operating a motor vehicle under the influence of alcohol.

*Id.* at 188, 651 A.2d at 143 (Concurring Opinion by Zappala, J.)(emphasis added). The concurrence concluded the officer did not follow the statutory procedure, as he failed to verbalize a request to draw blood, and suggested the subsequent warrantless search of Riedel's medical records for the test results would have violated Article I, Section 8. As the majority also emphasized its discussion did not address the Pennsylvania Constitution, we believe our Supreme Court would resolve this issue as the concurrence suggests; to comply with the Pennsylvania Constitution, one must have a warrant or adhere to the requirements of the statutory scheme.

Unlike Reidel, appellee Shaffer has framed the issue in terms of the Pennsylvania constitution. Accordingly, we find the absence of a police request precludes warrantless release of the test results under Section 1547.

■ Our discussion is hindered however, by the fact the majority as well as the concurrence in *Riedel* spoke of the need for police request, but cited Section 3755 rather than Section 1547 as the source of this requirement; this unfortunate transposition was repeated in *Barton* and in the trial court's opinion herein [2]. After closely examining these statutes and relevant legislative history, as well as the logic of the statutory scheme, we find a failure to request a blood test will not bar the officer from obtaining test results without a warrant, if the test is done pursuant to Section 3755.

Section 1547, the more broadly applicable part of the statutory scheme, does deal with

---

1. We are not presented with an argument of inevitable discovery, *See, e.g., Commonwealth v. Melendez*, 544 Pa. 323, 332, 676 A.2d 226, 230 (1996)(the inevitable discovery doctrine applies when there would have been a discovery independent of the unlawful act) and hence do not address the applicability of that concept to the present situation.

2. The concurrence in *Riedel* intended to differentiate between the constitutional requirement, federal versus state, of adherence to the statutory scheme, in order to justify the warrantless search of records; we do not believe the court meant to transpose the "request requirement" of Section 1547, into Section 3755.

a test based on an officer's probable cause; hence medical personnel would not conduct such a test absent a police request. Section 3755 does not implicate a police request however; there is no such requirement in its language, nor is there a logical reason for such.

Section 1547 deals with a warrantless blood, breath, or urine test based on the officer's probable cause, and authorizes the release of results without further process. It also grants an accused the statutory right to refuse a test sought under its auspices. Most often, testing under this section is of breath, conducted by the officer far from a hospital; while subsection 1547(j) immunizes any "physician, nurse or technician" involved, the applicability of Section 1547 does not require testing by medical personnel. Likewise, accidents, injury, and medical treatment are not needed for Section 1547 to apply.

Section 3755 is not a redundant version of Section 1547(j). It is a distinct part of the scheme, and deals with a different, limited situation. It speaks only to the obligation of a treating physician or designee to take blood in certain defined circumstances, an obligation regardless of the presence or request of an investigating officer. Indeed, the Section says nothing at all of police involvement; it requires the emergency room physician or designee to make the probable cause call, to take the blood, and on request release the results[3]. It does not deal at all with breath or urine testing. Similar judgment and reporting requirements are placed on medical care providers in other areas of great public concern, such as child abuse and gunshot wounds; DUI trauma is no less compelling[4].

As recognized in all the case law, the goal of the statutory scheme is not just to preserve evidence, but is also "to facilitate prosecution of chemically impaired drivers". *Kohl, supra.* In that regard, Section 3755 makes good sense. There are times when the emergency room physician has clear evidence of a driver's impairment, but the officer is obligated to remain at the crash scene. Indeed, the more serious the collision, the less likely an officer can follow a single driver to the emergency room; surely the volume of damage caused cannot be allowed to increase an intoxicated driver's chances to avoid a definitive statutory test. An officer cannot be everywhere and the legislature has appropriately prevented the multiplicity of duties and priorities at a crash site from continuing to be the cause of windfalls for impaired drivers. Section 1547 does not address this very common scenario where an officer's request is not practical or possible. Hence Section 3755, was enacted, mandating emergency room personnel take and test the blood and release the results without a warrant, if there is 1) treatment in an emergency room following a crash, and 2) probable cause to suspect driving under the influence. For very understandable reasons, Section 3755 has no "request" requirement. Therefore we answer the question of the need for a police request under this Section in the negative.

Nevertheless, we cannot find the learned trial court improperly suppressed the blood test results in this case. While a verbalized request by police to test is not a condition precedent under Section 3755, the Commonwealth has failed to prove the elements justifying a search under Section 3755. Not every test by a hospital is done pursuant to Section 3755, and the Commonwealth does not show the hospital was aware of any evidence indicating Shaffer was driving under the influence; if the officer was not present,

---

[3]. Medical personnel were instrumental in passage of similar laws nationwide. Frustrated with the devastation seen in the emergency room, and of watching medical confidentiality fears thwart prosecution of the people who cause that devastation, medical providers began a movement to close this loophole; this resulted in the enactment of many "Bonano" bills, named for nurse Carol Bonano, whose efforts caused Oregon to pass its version of Section 3755.

[4]. It would be feckless to argue the Commonwealth's interest in ending the carnage caused by drunk drivers is less than paramount. *Commonwealth v. Leninsky*, 360 Pa.Super. 49, 57, 519 A.2d 984, 988–89 (1986). "The slaughter on the highways of our Nation exceeds the death toll of all our wars." *Perez v. Campbell*, 402 U.S. 637, 657, 91 S.Ct. 1704, 1715, 29 L.Ed.2d 233 (1971) (Blackmun, J., concurring). This carnage is well documented and needs no detailed recitation here. *South Dakota v. Neville*, 459 U.S. 553, 558, 103 S.Ct. 916, 919, 74 L.Ed.2d 748 (1983).

his probable cause cannot be imputed to the medical attendants. What probable cause the hospital might otherwise have had is simply not part of the evidence.

The officer did not request a. test under Section 1547; the record does not show a test was undertaken pursuant to Section 3755. Accordingly, there was no compliance with the statutory scheme, and a warrant was needed for the search of Shaffer's records. Therefore the trial court properly suppressed the blood test results.

Order affirmed.

OLSZEWSKI, J., files a Concurring Opinion.

FORD ELLIOTT, J., files a Dissenting Statement.

OLSZEWSKI, Judge, concurring:

As noted by the majority, two searches occurred in this case; the first was the drawing of appellant's blood for medical purposes, and the second was the police officer's request for the results of this test. Because the blood was drawn for a medical, rather than an investigative purpose, the first search did not involve state action. *See Commonwealth v. Riedel*, 539 Pa. 172, 176–78, 651 A.2d 135, 138 (1994). Thus no constitutional issue is presented by this search. The second search, however, was done by the state and therefore presents a viable constitutional issue. *See id.* Accordingly, we must decide whether the police officer could obtain the results of the medical blood test without first securing a search warrant.

As a matter of federal constitutional law, the Pennsylvania Supreme Court found that as long as a police officer has probable cause to request a blood test before blood is actually drawn, she or he can request the results without a warrant under our implied consent statutory scheme. *See Riedel* at 182–84, 651 A.2d at 141. This is true whether the test was performed as a result of a police request or simply routine medical procedure. *See Riedel, supra.* The *Riedel* concurrence suggested that the Pennsylvania Constitution may mandate a different result.

The majority follows this suggestion in holding that the Pennsylvania Constitution does indeed require a warrant before obtaining the results of a strictly medical blood test. I agree. It is my view, however, that the majority's discussion of the first search, namely the blood drawing, is unnecessary for our decision. As noted, the medical personnel in this case were not state actors and, therefore, neither the federal nor our state constitutions were implicated by the search. Hence, I write separately to join in the majority's holding but not its discussion of blood searches.

FORD ELLIOTT, Judge, dissenting:

I respectfully dissent. On the facts of this case, I am hesitant to conclude that our supreme court would find a Pennsylvania Constitutional violation in the officer's acquisition of appellee's test results. I would reverse the suppression court and remand for trial.