**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Antrone FLOWERS, Appellant.**

Superior Court of Pennsylvania.

Submitted May 10, 1999.

Filed July 15, 1999.

Glenn M. Goodge, Allentown, for appellant.

James B. Martin, Dist. Atty., Allentown, for Com., appellee.

Before EAKIN, SCHILLER and TAMILIA, JJ.

TAMILIA, J.:

¶ 1  Antrone Flowers appeals from his January 24, 1997 judgment of sentence of five (5) to fifteen (15) years' imprisonment. Following a jury trial, appellant was found guilty of simple possession [1] (marijuana), possession with intent to deliver,[2] criminal conspiracy [3] and carrying a firearm without a license.[4]  This Court dismissed a direct appeal for failure to file a brief on October 28, 1997.  Upon review of appellant's Post Conviction Relief Act [5] petition, the trial court reinstated appellant's direct appeal rights nunc pro tunc.  The lengthy but relevant facts follow.

¶ 2  On July 12, 1995, the Drug Enforcement Agency (DEA) received an anonymous call regarding drug trafficking. The caller told DEA Agent Pepper that appellant would be arriving at 441 Central Boulevard, Bethlehem, Lehigh County, within the following one to three days and in possession of approximately 120 pounds of marijuana and a loaded 9mm semi-automatic handgun.  In addition, the caller was able to provide accurate information regarding appellant's physical description, his arrest record and his credit card number.  The caller contacted Agent Pepper again the following day with more detailed information including:

- that appellant was driving a green Mitsubishi Diamante with an Oklahoma license plate;

- that appellant would be arriving at the above address sometime between 6:00 – 9:00 p.m. that evening;  and

- that the amount of marijuana being transported would be approximately 60 pounds as opposed to the original estimate of 120 pounds.

Based upon this information, the DEA and local police set up surveillance that evening at the address provided and around 7:00 p.m., appellant was observed arriving at the address (the home of appellant's sister) in the vehicle described by the caller.

¶ 3  At that time, Agent Pepper began the process of obtaining a search warrant from a federal magistrate via phone. Meanwhile, appellant exited his vehicle and transported several items, including a white plastic bag, from the rear-end and trunk of the vehicle into the house.  Shortly thereafter, an elderly woman (later identified as appellant's mother) exited the residence carrying a similar white plastic bag and entered another vehicle.

¶ 4  Suspecting the bag was the same one appellant had transported into the residence and that the bag contained marijuana, appellant's mother was immediately stopped and the bag and her vehicle were searched.  While the search revealed no contraband, once conducted, it made it impossible to maintain the undercover nature

---

1.  35 P.S. § 780–113(a)(16).

2.  *Id.* § 780–113(a)(30).

3.  18 Pa.C.S.A. § 903.

4.  *Id.* § 6106.

5.  42 Pa.C.S.A. §§ 9541–9546.

of the investigation. As a result, and despite having not yet received a search warrant, law enforcement secured the residence. They first knocked and announced themselves and upon receiving no response, waited approximately 30 seconds and then forcibly entered the residence. While law enforcement activity inside the house was limited to detaining those found therein (appellant, his brother, his sister and her young children), outside, appellant's vehicle was searched and a loaded 9mm semi-automatic handgun and a bag containing what was later determined to be marijuana residue were discovered in the trunk.

¶ 5 It was only after these events transpired that the awaited search warrant was issued via phone. Pursuant to the warrant, the house was searched and approximately 15 pounds of marijuana were seized.

¶ 6 The following questions are now before this Court on appeal.

A. Did the trial court commit reversible error in failing to suppress the physical evidence, seized without probable cause, through a warrantless search, where no legitimate exigent circumstances existed?

B. Did the trial court commit reversible error in failing to grant appellant's request for a transcript of the suppression hearing for the defendant's use at trial for impeachment purposes?

C. Did the trial court commit reversible error by reversing a prior ruling on a motion in limine, thereby allowing into evidence hearsay testimony of a confidential informant which the trial court had previously excluded?

D. Did the trial court commit reversible error by failing to grant a mistrial after the trial court reversed it [sic] prior ruling on appellant's motion in limine and allowed into evidence hearsay testimony of a confidential informant, which the trial court had previously ordered excluded?

(Appellant's brief at 4.)

Our scope of review in evaluating the trial court's refusal to suppress evidence is to determine whether the factual findings of the suppression court are supported by the record. When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error. Thus, if sufficient evidence is of record to support the suppression court's ruling and that court has not misapplied the law, we will not substitute our credibility determination for that of the suppression court judge.

*Commonwealth v. Days*, 718 A.2d 797, 801 (Pa.Super.1998) *quoting Commonwealth v. Marinelli*, 547 Pa. 294, 315–316, 690 A.2d 203, 214 (1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1309, 140 L.Ed.2d 473 (1998) (citation omitted).

¶ 7 We begin by addressing whether the stop of appellant's mother was lawful. It is well established that police lawfully can make an investigatory stop where they rely on specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant a belief that criminal activity is afoot. *Commonwealth v. Myers*, 728 A.2d 960 (Pa.Super.1999). In the process of investigating appellant for drug trafficking and suspecting the residence was a stash house,[6] appellant's mother exited the residence carrying a white plastic bag only a

---

6. At the October 1, 1996 suppression hearing, DEA agent Pepper testified that stash house is a term used to refer to the location at which narcotics and cash are held.

short time after appellant had entered carrying in a similar white plastic bag. Based upon our review of the record, it is clear the stop was permissible pursuant to *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). There was articulable suspicion founded upon evidence which reasonable persons would agree indicates the likelihood of criminal activity.

¶ 8 Next, we must determine whether the warrantless entry by police and DEA agents into the residence was permissible. "It is well-settled that exigent circumstances excusing the warrant requirement arise where the need for prompt police action is imperative. Exigent circumstances can be generated when evidence sought to be preserved is likely to be destroyed or secreted from investigation, or because the officer must protect himself from danger to his person by checking for concealed weapons. Whether exigent circumstances exist depends on 'an examination of all of the surrounding circumstances in a particular case.' " *Commonwealth v. Peterson*, 408 Pa.Super. 22, 596 A.2d 172, 179 (1991) quoting *Commonwealth v. Hinkson*, 315 Pa.Super. 23, 461 A.2d 616, 618 (1983).

¶ 9 The Commonwealth argues, and the trial court agreed, that once the lawful investigatory stop of appellant's mother was initiated, the need for prompt police action was imperative. The facts support this argument and give rise to an exception to the warrant requirement under Pennsylvania law *as to the house*. The fact that the search of the mother's white plastic bag did not result in the recovery of contraband in no way negates the exigency created by the search. Accordingly, this case is distinguishable from *Commonwealth v. Melendez*, 544 Pa. 323, 676 A.2d 226 (1996), where the Supreme Court found *no* articulable reason for the stop of an automobile some distance from the home later searched. In *Melendez*, because the stop was impermissible, the re-turn to the house with Melendez, and the warrantless search of the house (by entrance with the key supplied by her) could not be justified pursuant to the "exigent circumstance" rule. Moreover, the fact a warrant was forthcoming was of no moment as the initial stop was invalid.

¶ 10 Here, the facts are clearly distinguishable. The police did not create their own exigent circumstance but clearly acted with justification and upon articulable reasons for the stop of the mother. Since that stop was justified, and in full view of persons in the house, the police were justified in entering the house *before* the verbal permission to search was received. In this case, the exigent circumstances were not the result of illegal activity by the police but flowed from a proper *Terry* stop which unavoidably created exigent circumstances, necessitating entry without a warrant in order to prevent destruction of the contraband which was the subject of the ongoing criminal investigation.

¶ 11 Due to the distinguishable circumstances, we find *Melendez* has limited application to this case. Unlike the investigation in *Melendez* where police obtained their information based primarily upon their own investigation, the suspicions of law enforcement in this case were founded upon an independent source, i.e. the accurate and detailed information provided by an informant. Surveillance merely confirmed the information and, in conjunction with the exigent circumstance doctrine, justified entry of the house. The stop of defendant's mother did not create the investigatory basis for entry into the house but rather created the unavoidable need for prompt police action. Here, the independent source doctrine complied with the stringent rule suggested by Justice Cappy in *Commonwealth v. Mason*, 535 Pa. 560, 637 A.2d 251 (1993), as adopted by the Court in *Melendez, supra*.

¶ 12 The exception, however, does not extend to the search of the vehicle driven by defendant as its search could

have awaited the approval of the warrant. Police and DEA were present in sufficient numbers so as to prevent removal, destruction or contamination of the evidence found in the vehicle. As the persons in the house were secure, the vehicle also lacked the inherent mobility typically associated with motor vehicles. In so finding, we are abiding by the general requirement of the law that we protect an individual's constitutional rights to the fullest extent possible while permitting law enforcement officers to execute their dangerous and difficult responsibility with a minimum of technical restrictions. We believe such a balance is properly achieved in our ruling in this case.

¶ 13 It is clear upon review of the record, the search of appellant's mother and the securement of the house and those persons inside were proper due to unavoidable exigent circumstances beyond the control of law enforcement. As this same exigency did not extend to appellant's vehicle, we find its search and the seizure of evidence therefrom to have been improper.

¶ 14 In summation, we find the stop and search of appellant's mother to have been proper, the securement of the house to have been justified and the search of the house and seizure of the drugs found therein to have been conducted pursuant to a valid search warrant (untainted by the prior warrantless entry into the house which was justified under the exigent circumstances exception). The warrantless search of appellant's vehicle, however, was clearly impermissible and accordingly, the evidence seized therefrom should have been suppressed.

¶ 15 Judgment of sentence vacated; case remanded for a new trial consistent with this Opinion.

¶ 16 Jurisdiction relinquished.

¶ 17 Dissenting Statement by SCHILLER, J.

SCHILLER, J., dissenting:

¶ 1 Because I believe that the police in this case had no reasonable or articulable basis for suspecting that Appellant's mother was involved in criminal activity, and because in stopping her the police created the exigent circumstances on which they relied to conduct a warrantless search, I respectfully dissent.

¶ 2 The majority distinguishes our Supreme Court's holding in *Commonwealth v. Melendez*, 544 Pa. 323, 676 A.2d 226 (1996), arguing that, in this case, the police acted permissibly in stopping Appellant's mother.. I disagree. In this case, neither the information provided by the anonymous confidential informant nor the police's own surveillance at the scene linked the woman, later identified as Appellant's mother, to suspected criminal activity. The information provided by the anonymous confidential informant related solely to the activities of Appellant at this particular location. Moreover, while the woman was seen exiting a suspected "stash house" with a white plastic bag "similar" to that carried into the residence by Appellant, there was no evidence that this bag contained controlled substances. As the Supreme Court recognized in *Melendez*, merely leaving the scene of suspected criminal activity, without more, does not provide police with justification to perform even a limited *Terry* [7] stop.

¶ 3 I also disagree with the majority's conclusion that the police had exigent circumstances following the stop of Appellant's mother to search the residence. Instead of following the woman to see where she went and/or continuing their surveillance of the residence until the search warrant was procured, the police stopped her in full view of the persons inside the house thereby "blowing their cover". Again, there was no imperative need for police intervention at the time of the stop and, as our Supreme Court stated in *Melendez*, "[I]f the concern was that police activity might have been witnessed by a

---

**7.** *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20    L.Ed.2d 889 (1968).

person remaining in the house who might begin to destroy evidence, such a possibility is of no legal consequence, for police may not create their own exigencies, which they then use as justification for exclusion from normal warrant requirements." 544 Pa. at 332, 676 A.2d at 230.

¶ 4 I would therefore find that the stop and, therefore, the search of the residence were illegal, and the items seized as a result thereof should have been suppressed.