J-S04008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEON EUGENE HORST | : | |
| | : | |
| Appellant | : | No. 1460 MDA 2018 |

Appeal from the Judgment of Sentence Entered August 1, 2018
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0002085-2017

BEFORE:   SHOGAN, J., OTT, J., and STEVENS*, P.J.E.

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 13, 2019**

Appellant, Leon Eugene Horst, appeals from the judgment of sentence entered following his conviction of possession of methamphetamine with intent to deliver and possession of methamphetamine.[1]  We affirm.

The trial court summarized the facts and procedural history as follows:

On September 29, 2017, State Police Troopers proceeded to [Appellant's] residence in order to serve an arrest warrant upon [Appellant].  [Appellant] was not present.  However, police did encounter [Appellant's] wife, Amanda Sue Horst [("Wife")].  Trooper Shadi Johnson asked [Wife] if police could search the premises in order to locate [Appellant].   [Wife] gave her permission for such a search.

Trooper Johnson described [Appellant's] property as "pretty big."  It included several garages.  [Wife] told Trooper Johnson that the garages were "[Appellant's] space."  She indicated that she did not enter those garages.  However, she possessed keys to the garages.

_____

[1]  35 P.S. §§ 780-113 (a)(30) and 780-113(a)(16), respectively.

_____

*   Former Justice specially assigned to the Superior Court.

The troopers obtained written consent from [Wife] to search the residence, garages and shed located at the Horsts' jointly possessed property. Thereafter, Trooper Johnson remained with [Wife] while other troopers conducted the search.

Corporal Scott Fidler was the ranking officer on scene when police attempted to execute the arrest warrant. Corporal Fidler testified that [Wife] provided keys to a two-car garage located on the Horst property. In the process of looking inside the garage for [Appellant], Corporal Fidler observed numerous items in plain view that he described as "paraphernalia" and items "consistent with drug packaging." Based upon what he observed in plain view, Corporal Fidler made the decision to seek a search warrant.

Following the issuance of a search warrant, police conducted a more extensive search of the garage. They located plastic baggies, 300 grams of methamphetamine, 17 guns, body armor, digital scales, $20,000 in cash, glass smoking pipes, gas masks, torches and other items consistent with the manufacturing of methamphetamine. Based upon what the police located, additional charges were lodged against [Appellant].

On January 2, 2018, [Appellant] filed a Motion for Suppression of Evidence. [Appellant] argued that police did not have valid consent to search the garage area and that the subsequently[]obtained search warrant was not supported by adequate probable cause. We conducted a hearing regarding [Appellant's] Motion to Suppress on April 4, 2018. Following a hearing, we issued a Court Order to deny [Appellant's] Motion to Suppress.

[Appellant's] case was called to [c]ourt during the June 2018 term of Criminal Jury Trials. [Appellant] was convicted of all counts. On Docket 2084-2017, we imposed a sentence of five (5) to ten (10) years in a State Correctional Facility. We also declared [Appellant] to be RRRI eligible. On Docket 98-2018, we imposed a sentence of one (1) to two (2) years in a State Correctional Facility to be served concurrent to Docket 2084-2017. Finally, on Docket 2085-2017, we imposed a sentence of one (1) to two (2) years to be served consecutive to the sentence imposed on Docket

- 2 -

2084-2017.[2]  Thus, the aggregate sentence we imposed upon [Appellant] on August 1, 2018 was six (6) to twelve (12) years in a State Correctional Facility.

Trial Court Opinion, 10/10/18, at 2-4 (internal citations to the notes of testimony omitted).  Appellant filed a timely notice of appeal.[3]  Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following single issue for our review:

1. Whether the trial court erred in denying Appellant's motion to suppress where testimony was given at the pretrial hearing that valid consent to search was not given?

Appellant's Brief at 4.

The standard of review an appellate court applies when considering an order denying a suppression motion is well established.  "On review from an order suppressing evidence, we 'consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted.'"

---

[2]  The one-to-two-year term of imprisonment at Docket Number CP-38-CR-0002085-2017 was imposed for Count I, delivery of methamphetamine.  The trial court deemed Count II, possession of methamphetamine, to merge with Count I for purposes of sentencing, and it imposed no further penalty.

[3]  The Commonwealth, in its brief, asserts that from review of Appellant's dockets, it appears "some of the initial charging documents were filed incorrectly.  They appear to have been flipped."  This has no relevance to the issues raised on appeal."  Commonwealth's Brief at 2 n.1.  We note that Appellant has appealed, and this case involves, Appellant's judgment of sentence of one to two years of imprisonment related to Docket Number CP-38-CR-0002085-2017 only, which the trial court ordered to be served consecutively to the sentence imposed on Docket Number CP-38-CR-0002084-2017.

*Commonwealth v. Johnson*, 202 A.3d 125, 127 (Pa. Super. 2019). "This Court is bound by the factual findings of the suppression court where the record supports those findings and may only reverse when the legal conclusions drawn from those facts are in error." *Commonwealth v. Haynes*, 116 A.3d 640, 644 (Pa. Super. 2015). Because the Commonwealth prevailed in the suppression court, we consider only the Commonwealth's evidence and the evidence presented by Appellant that remains uncontradicted. *Commonwealth v. Smith*, 77 A.3d 562, 568 (Pa. 2013). Additionally, we may consider only the evidence presented at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1085–1087 (Pa. 2013).

Appellant asserts that police did not have valid consent to search. Appellant's Brief at 8. Appellant maintains that Wife never gave verbal permission to search the premises. *Id.* at 10. Appellant posits that Wife's consent was invalid "because it was a mere acquiescence to the overwhelming police presence." *Id.* at 12. Appellant cites *Commonwealth v. Melendez*, 676 A.2d 226 (Pa. 1996), and suggests that, similar to the appellant in that case, Wife "had no choice but to acquiesce to the search." *Id.* at 15–16. As explained *infra*, Appellant is wrong on every point asserted.

The determination of whether consent to search is voluntarily given involves examination of a number of factors, for example: 1) the presence or absence of police excesses; 2) whether police directed the citizen's movements; 3) police demeanor and manner of expression; 4) the location of

the search; 5) the content of the questions and statements; and 6) whether the citizen has been informed that he is not required to consent to the search. *Commonwealth v. Powell*, 994 A.2d 1096, 1102 (Pa. Super. 2010) (quoting *Commonwealth v. Kemp*, 961 A.2d 1247, 1261 (Pa. Super. 2008) (*en banc*)). Moreover, "one's knowledge of his or her right to refuse consent remains a factor in determining the validity of consent ..." and whether the consent was the "result of duress or coercion." *Smith*, 77 A.3d at 573.

Our review of the record reflects that the instant search was not conducted pursuant to any type of detention, and it was consensual. Specifically, testimony at the suppression hearing indicated that Pennsylvania State Police Trooper Shadi Johnson and Corporal Scott Fidler went to Appellant's residence with an arrest warrant for Appellant on the morning of September 27, 2017. Wife answered the door and indicated Appellant was not present and in fact, had not been there for one or two days. N.T., 4/4/18, at 5, 21. Regarding Appellant's claim that Wife never gave verbal permission, Trooper Johnson testified that he asked Wife if police could search the premises for Appellant, and Wife "said we could." *Id.* at 6. Wife, herself, testified that she allowed police to search for Appellant when they asked permission. *Id.* at 35. Wife never testified that her will was overborne or that she was intimidated. Both Trooper Johnson and Corporal Fidler testified that they told Wife she did not have to give consent to search. *Id.* at 18, 24.

Trooper Johnson testified that when he asked Wife if police could search for Appellant in the locked detached garage, Wife said yes. *Id.* at 6. Trooper Johnson also testified that Wife signed a consent form to search, which she read herself and which the trooper also explained. *Id.* at 6–7. Corporal Fidler testified that when police asked Wife if they could search for Appellant in the locked garage, Wife produced the keys. *Id.* at 21–22. Wife testified consistently and stated, "They [police] asked if I had keys to the garage, and I did. They asked if they could have it. I gave it to them." *Id.* at 36. Corporal Fidler explained that in the course of searching the garage for Appellant, the trooper observed a vacuum sealer, items consistent with drug packaging, a money counter, a gas mask, a pipe he knew "through [his] training and experience is associated with crystal meth," and other drug paraphernalia. *Id*. at 22, 25, 26. For this reason, the corporal drew the conclusion that "[t]he garage was associated with a larger scale trafficking investigation," and he then sought a search warrant for the location. *Id.* at 26. At the suppression hearing, defense counsel agreed that a third state trooper, who was searching for Appellant in the garage, "would have been in position to view those contraband items in plain view." *Id.* at 33.

The trial court determined "as a finding of fact that [Wife] was not coerced into providing consent and that her consent was in fact voluntary." Trial Court Opinion, 10/10/18, at 6. We are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses, and it is

entitled to believe all, part or none of the evidence presented. *Commonwealth v. Haslam*, 138 A.3d 680 (Pa. Super. 2016) (citing *Commonwealth v. Benton*, 655 A.2d 1030, 1032 (Pa. Super. 1995)). Our review of the record, as described above, reflects that Wife provided a voluntary verbal consent to the search of the house and garage in the police effort to locate Appellant following a non-coercive discussion with Trooper Johnson; Wife voluntarily signed a police form giving consent; unlike in *Melendez*, police herein informed Wife that she did not have to consent; and Wife was not coerced into giving police the keys to the garage. The police activity preceding Wife's consent was legitimate, no verbal or physical force was used, and there were no police excesses. Following our review of the record, the trial court did not err in denying Appellant's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/13/2019