**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JOHNTAE LAVELL ALEXANDER | |
| Appellant | No. 1631 WDA 2016 |

Appeal from the PCRA Order Dated September 30, 2016
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0000118-2015

BEFORE: STABILE, J., SOLANO, J., and FITZGERALD, J.[*]

MEMORANDUM BY SOLANO, J.: **FILED AUGUST 18, 2017**

Appellant, Johntae Lavell Alexander, appeals from the order denying his petition filed under the Post–Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. We reverse and remand.

On September 8, 2015, Appellant pleaded guilty to possessing heroin with the intent to deliver.[1] On October 21, 2015, the trial court sentenced him to 5 to 10 years' incarceration. Appellant did not file a post-sentence motion or direct appeal.[2] On June 16, 2016, Appellant filed the underlying

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

[2] The record contains a handwritten letter from Appellant to his counsel dated October 26, 2015, and time-stamped October 27, 2015, in which he requests that counsel "please file for a re-sentencing modification." The letter is attached to another letter, from the Erie County Clerk of Courts,

*(Footnote Continued Next Page)*

PCRA petition *pro se*.[3]  The PCRA court appointed counsel on June 22, 2016.

Counsel filed an amended petition on July 22, 2016.  On September 7, 2016,

the PCRA court issued notice of its intent to dismiss Appellant's petition

without a hearing pursuant to Pa.R.Crim.P. 907, stating that it "determined

that there are no genuine issues concerning any material fact."   On

September 22, 2016, Appellant filed a response in which he asserted that

the PCRA court "misconceives the material facts of record that are in

dispute."   On September 30, 2016, the PCRA court dismissed Appellant's

PCRA petition.  Appellant then filed this timely appeal.

Appellant presents two issues for our review:

1. Did the PCRA court err when it dismissed, without a hearing, Appellant's claim that trial counsel was ineffective for failing to advise Appellant that, by pleading guilty, he would not be permitted to challenge the trial court's denial of his motion to suppress on appeal, as this omission

*(Footnote Continued)* ————————

that forwards a copy of Appellant's letter to his attorney and advises: "kindly review same for any action you deem appropriate.  If you no longer represent the defendant please contact the Clerk of Courts."  The letter further indicates that the Clerk of Courts copied Appellant and the District Attorney.  The record does not reflect that Appellant's counsel took any action.  The subsequent docket entries were the filing of three transcripts in January of 2016, followed by Appellant's *pro se* PCRA petition on June 16, 2016.

[3] Appellant's petition was timely because it was filed within one year after his sentence became final.  *See* 42 Pa.C.S. § 9545(b).  Appellant's sentence became final on November 20, 2015, when the 30-day period for filing a direct appeal to this Court expired.  *See* Pa.R.Crim.P. 720 ("the defendant's notice of appeal shall be filed with 30 days of imposition of sentence"). Therefore, Appellant had until November 20, 2016 to file a timely PCRA petition.

caused him to enter an unknowing, involuntary and unintelligent plea?

2. Did the PCRA court err when it dismissed, without a hearing, Appellant's claim that trial counsel was ineffective for failing to challenge the lawfulness of the officers' initial stop of Appellant at the train station and that this failure caused Appellant to enter an unknowing, involuntary and unintelligent plea?

Appellant's Brief at 7.

There is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary. *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008) (citation omitted), *appeal denied*, 956 A.2d 433 (Pa. 2008). A reviewing court must examine the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing. *Commonwealth v. Springer*, 961 A.2d 1262, 1264 (Pa. Super. 2008) (citation omitted).

Our standard of review is as follows:

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Further, where the

- 3 -

petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

In both of his issues, Appellant seeks post-conviction relief on the basis that trial counsel was ineffective. The law presumes that counsel has rendered effective assistance. ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010). The burden of demonstrating ineffectiveness rests on the petitioner. ***Id.*** To satisfy this burden, the petitioner must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different." ***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003). Failure to satisfy any prong of this test will result in rejection of the petitioner's ineffective assistance of counsel claim. ***Commonwealth v. Jones***, 811 A.2d 994, 1002 (Pa. 2002).

### Advice about Consequences of Guilty Plea

In his first issue, Appellant asserts that trial counsel failed to advise him that his plea "effectively narrowed the issues that he could raise on appeal, thereby precluding him from challenging the trial court's denial of his motion to suppress . . . [and] resulted in Appellant entering an unknowingly,

involuntary and unintelligent plea." Appellant's Brief at 18. Appellant recognizes that he "gave up his right to pursue this suppression issue on appeal," and accurately states:

> "For a plea to be made knowingly and intelligently, a defendant must be aware of what the plea connotes and its consequences." **Commonwealth v. Champion**, 401 A.2d 760, 761 (Pa. Super. 1979). It is well settled that "[u]pon entry of a plea, a defendant generally waives all defects and defenses except those concerning the validity of the plea, the jurisdiction of the trial court, and the legality of the sentence imposed." **Commonwealth v. Boyd**, 835 A.2d 812, 815 (Pa. Super. 2003).

Appellant's Brief at 20.

Appellant argues that his effectiveness claim has arguable merit, and he is entitled to an evidentiary hearing, because both the written plea and oral plea colloquy fail to demonstrate that he was advised of his rights. Appellant references his counsel's silence during the plea hearing. Appellant's Brief at 21. He states, "[w]hile counsel's failure to advise was problematic alone, counsel's silence in the face of the Commonwealth's incomplete discussion of appellate rights fell below the competence demanded of an attorney in this situation[.]" **Id.** at 22. Appellant adds that "the colloquy contributed to the [Appellant's] misunderstanding of his rights." **Id.**

In response, the Commonwealth has adopted the reasoning of the PCRA court. Commonwealth Brief at 1. The PCRA court specifically "determined that there are no genuine issues concerning any material fact of

Appellant's petition for post-conviction relief" which would warrant a hearing. PCRA Court Opinion, 9/7/16, at 1. However, the PCRA court did not fully address Appellant's assertion that he was not fully advised of his appellate rights. The PCRA court primarily focused on the merits of Appellant's underlying claim regarding his suppression issue, stating:

> After a review of the record, this Court concludes that [Appellant] is not entitled to relief. Foremost, [Appellant's] suppression motion was appropriately denied because [Appellant] voluntarily consented to the searches, and the record was devoid of any constitutional violation. [Appellant] was not "misadvised" by counsel to enter into a guilty plea based upon the correct dismissal of his suppression motion. ***The plea colloquy shows that [Appellant] was aware of all the relevant factors and consequences of entering a plea.*** [Appellant] noted his understanding of his guilty plea and unequivocally entered that plea. His plea was knowingly, voluntarily and intelligently entered, and his assertions to the contrary are belied by the record. Furthermore, assuming *arguendo*, plea counsel did not advise him that he was foreclosed from challenging the suppression ruling if he pled guilty, there was no prejudice as any challenge on appeal would not have been successful.

PCRA Court Opinion, 9/7/16, at 3 (emphasis added). The court thus emphasized the merit of Appellant's suppression claim, rather than the competency of counsel's advice regarding Appellant's decision to plead guilty and loss of his right to challenge the denial of suppression on appeal as a result of his plea.

Contrary to the PCRA court's assertion, our review of the record does not show that Appellant "was aware of all the relevant factors and consequences of entering a plea." Trial Court Opinion, 9/7/16, at 3.

Appellant's written plea colloquy is a one-page document that does not mention appellate rights or how pleading guilty impacts issues that may be raised on appeal. "Defendant's Statement of Understanding of Rights Prior to Guilty/No Contest Plea," 9/8/15. Further, the notes of testimony from the plea hearing confirm that Appellant's counsel did not speak – at all – during the plea hearing. ***See generally***, N.T., 9/8/15, at 1-11.

On the day of Appellant's plea, Appellant was one of 17 defendants who appeared before the court for guilty pleas. ***See*** N.T., 9/8/15, at 1-11. Assistant District Attorney Bingle, on behalf of the Commonwealth, generally advised all 17 of them of the plea process. Mr. Bingle referenced the rights to counsel and a jury trial, the judge's sentencing discretion, and the sentencing guidelines. Mr. Bingle also explained post-sentence motions and the 30-day period for filing a notice of appeal. Mr. Bingle stated, again generally, "[i]f you fail to raise things at the right time, you forever lose your right to raise them in the future. So you have to understand that." ***Id.*** at 4. Thereafter, Mr. Bingle addressed Appellant individually. He explained that in exchange for Appellant's plea, the Commonwealth would *nolle pros* another charge.[4] ***Id.*** at 9. He also stated the parties' stipulation to Appellant's prior record score under the sentencing guidelines and the maximum statutory penalties. ***Id.*** Appellant then entered his guilty plea without any on-the-

_____

[4] The charge was for possession of a controlled substance. ***See*** 35 P.S. § 780-113(a)(16).

- 7 -

record input or commentary from his counsel. *Id.* at 10. Thus, there is no evidence that counsel advised Appellant of how his plea impacted the issues he could raise on appeal..

On this record, we cannot find that Appellant was advised fully of the implications of his plea. We recognize:

> The right to the constitutionally effective assistance of counsel extends to counsel's role in guiding his client with regard to the consequences of entering into a guilty plea. [*Commonwealth v.*] **Wah**, 42 A.3d [335], 338 [Pa. Super. 2012].
>
> > Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.
>
> *Id.* at 338–39 (internal quotation marks and modifications omitted); *see Commonwealth v. Yager*, 454 Pa.Super. 428, 685 A.2d 1000, 1003–04 (1996). Thus, to establish prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." [*Commonwealth v.*] **Rathfon**, 899 A.2d [365], 369–70 (Pa. Super. 2006) (quoting **Hill v. Lockhart**, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). "The reasonable probability test is not a stringent one"; it merely refers to "a probability sufficient to undermine confidence in the outcome." *Id.* at 370 (quoting *Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa.Super.2002)).

*Commonwealth v. Barndt*, 74 A.3d 185, 192 (Pa. Super. 2013).

Based on the record before us, there is a genuine issue as to whether counsel competently advised Appellant of the ramifications of his guilty plea. Accordingly, we remand for a hearing on this issue.

**Challenge to Lawfulness of Appellant's Detention**

In Appellant's second issue, he claims that trial counsel was ineffective for failing to challenge the lawfulness of the initial stop of Appellant at the train station, and contends that this omission ultimately caused him to enter his guilty plea. Appellant asserts "at a minimum, [the issue] should have been explored at an evidentiary hearing." Appellant's Brief at 26. Appellant states:

> In the instant case, Appellant has asserted that his counsel did not discuss with him whether the officers had reasonable suspicion and/or probable cause to stop him at the train station based upon the tip [from a confidential informant]. Further, within the Omnibus Pre-Trial Motion and at the hearing itself, counsel failed to really delve into the reliability of the tip and the circumstances under which the tip was received. In fact, the suppression court commented to trial counsel that it could not understand why counsel sought to "make the informant reliable" because the suppression court found that the informant was not reliable enough and that the information provided was "pretty general." N.T. Suppression Hearing, 6/3/15, at 35. Therefore, . . . the failure to properly discuss this suppression claim with Appellant and to include it within the issues addressed at the suppression hearing appears to lack a reasonable basis and therefore resulted in the entry of an invalid plea. . . . Alternatively, had counsel properly advanced this suppression claim, the evidence against him would have been suppressed as the fruit of an illegal detention.

Appellant's Brief at 25-26.

- 9 -

Appellant's counsel filed a motion to suppress in which Appellant averred that after he exited a train, he was immediately detained by police and subjected to two "pat-down/body searches" to which he did not consent. Suppression Motion, 4/17/15, at 2 (unnumbered). Appellant correctly asserted that "even if the initial contact between the police officers constituted an investigative detention, that detention would have to have been supported by reasonable suspicion." *Id.* However, Appellant proceeded to seek suppression on the basis that, "by the time [Appellant] was subjected to the continuing detention and subsequent intrusive pat-down search of his person, [he] was at that point in custodial detention which required probable cause." *Id.* Appellant asserted that the police lacked probable cause for the second search, and sought suppression of the "drugs/contraband which was seized during the second intrusive search." Suppression Motion, 4/17/15, at 3 (unnumbered).

At the hearing on Appellant's suppression motion, the trial court stated that the issue was "recovery of evidence without a warrant." N.T., 6/3/15, at 3. City of Erie Police Sergeant Matthew Fischer was the sole witness. Sergeant Fischer testified to receiving information from a confidential informant about Appellant, who Sergeant Fischer had investigated in the past. *Id.* at 5. Sergeant Fischer waited for Appellant at the train station with three other officers. They approached Appellant, who was backed into a corner, and Sergeant Fischer asked Appellant if he could search him;

Sergeant Fischer testified that Appellant consented to the search. *Id.* at 12.
Another officer, Lieutenant Nolan, searched Appellant and did not find
contraband. *Id.* at 16. Sergeant Fischer then conducted a "more thorough"
search of Appellant and recovered "a big chunk of heroin" from Appellant's
underwear. *Id.* at 17-18. The officers did not have a search warrant. *Id.*
at 23.

The following exchange occurred between Appellant's counsel and
Sergeant Fischer on cross-examination:

> **Q**: And prior to you then conducting another full search
> of his crotch and groin area, you did not again ask him
> whether or not he consented to another search, did you?
>
> **A**: I did not, no.
>
> **Q**: And at that point in time, despite that fact that
> nothing had been found on his person by Lieutenant Nolan,
> and nothing had been found in the travel bag or in the
> box, he was not free to leave, was he?
>
> **A**: No, he wasn't.
>
> **Q**: He was not free to leave from the moment you went
> up to him and identified yourself as Detective Matt Fischer
> and showed him your police badge, fair?
>
> **A**: That is fair, that's correct.

N.T., 6/3/15, at 28. Sergeant Fischer testified that he conducted the second
search based on his experience that "these guys that are traveling on these
trains or any conveyance for that matter, these guys always hide the stuff in
their groin or buttocks area." *Id.* He testified that Appellant never revoked
his consent to search. *Id.* at 30.

After Sergeant Fischer's testimony, the parties and court discussed the encounter:

> **THE COURT**:     Let's go a little bit here just to sort of narrow where you're going to go and where [the Commonwealth] is going to go.
>
> You see this – first of all, they get him in the elevator.  **And despite your attempts to say he wasn't cornered, it looks like he's cornered pretty well once he's in the elevator**.
>
> **COMMONWEALTH**:     I'm not going to argue – **I think this is an investigative detention from the get go**.
>
> **COURT**:             So do I.  We agree on that.  It hasn't risen to an arrest yet, **but clearly it was an investigative detention**.
>
> **[APPELLANT'S] COUNSEL**:       **Yeah**.
>
> **COURT**:             So finding the officer credible in the context of the investigative detention of the defendant.  And this looks like the bust cases, right?  They have got this guy the way the Feds do, or a bust where there is no way out except the back door.  No one takes it, right?  So you feel uncomfortable.  He's alone in the train station with these four police officers there.  He's there and they want to search him, right?  **He doesn't have an easy way out, and he certainly can't walk away.  He's not free to go.  It's an investigative detention**.  And they say, you know, "Can we search you?"  And he says, "Yes."
>
> Now I find the officer credible.  So my first conclusion is you don't challenge that if the officer said – is credible, that that's a valid consent.  Or do you?
>
> **[APPELLANT'S] COUNSEL**:       Oh, sure, I still do.
>
> **COURT**:                  What?
>
> **[APPELLANT'S] COUNSEL**:       Yes, I – No, I do not question his credibility.

- 12 -

**COURT**: Right. But you say that's not valid consent in that circumstance.

**[APPELLANT'S] COUNSEL**: Yes.

**COURT**: Little too –

**[APPELLANT'S] COUNSEL**: It's either not a valid consent or they continue the consent until the second search.

**COMMONWEALTH**: I think [Appellant's Counsel] breaks this down into two separate searches.

**COURT**: I got you. Then that's the question. The first question is when someone indicates a consent, what's the case law? Tell us about it. I mean, here the consent is closely circumscribed as to time and they don't move the defendant or take him anywhere. So everything occurs within where he's standing. It's just that Nolan does a search and this gentleman does what I euphemistically refer to as more of a TSA search, the kind you get at an airport, and then he finds the drugs. The question is does the consent embrace that when it occurs within a short period of time?

Your view is no, that's two separate searches. You need affirmative consent for each. The Commonwealth undoubtedly has to argue that this is embraced within the context of one consent.

**COMMONWEALTH**: Yes, I think that tentatively how that has happened is this is all one search. Him saying -- him delineating the scope of the search, "I got nothing to hide."

**COURT**: Yeah. So he doesn't negotiate in your view one officer, one search, you're done. But I got you.

[**Counsel], so those are the issues, right? Are there more here that you see**? I know they could have –

**[APPELLANT'S] COUNSEL**: **Well, no, I don't think there is more. I think I need to define – no, I don't think there is more more** [*sic*] issues to give you directives.

- 13 -

**COURT**: I noticed you went on with him, trying to make the informant reliable. **My initial assertion was that the informant wasn't reliable enough**. What he knew about your client, anyone that lived nearby him could have noted. Where he lived, what kind of car he drives. Who lived with him. Those kind of things were pretty general. And there wasn't anything particular in what he said would, I think, without establishing the informant's credibility, of giving the Magistrate cause to issue a warrant. You would rather have him have the ability to get a warrant and not go there. But I don't think we are there in any circumstance.

**COMMONWEALTH**: Judge, I think it's a collateral matter worth exploring. But it doesn't lead us to the final destination.

**COURT**: I see that as final too. So we will focus on this consent, the circumstances under which it was generated and whether it embraces these two separate serial pat downs.

**[APPELLANT'S] COUNSEL**: Yes.

**COURT**: All right.

**COMMONWEALTH**: **I do think there was sufficient reasonable suspicion to just file** [*sic*] **the investigative detention**. I want to put that on the record too, Your Honor.

**COURT**: **I agree with that. I think, given what they knew, they were entitled to do what they did. If there is something different, though, [Counsel], I'll look at that. That's just my threshold observation**.

What do you want, ten days?

**[APPELLANT'S] COUNSEL**: Today is Wednesday. Yes, by next Friday would be great. Nine days is fine.

N.T., 6/3/15, at 31-36 (emphasis added). The next docket entry after the court took the suppression issue under advisement is the court's June 17, 2015 order denying the suppression motion. The record does not reflect that Appellant's counsel filed anything in support of

Appellant's suppression motion in the time frame set by the court at the hearing or otherwise.

On this record, Appellant claims that trial counsel failed to challenge the legal basis for the officers' initial stop of him at the train station, and, as a consequence, he entered a guilty plea without having fully litigated "potentially meritorious suppression claims." Appellant's Brief at 23. Appellant recognizes that an investigative detention must be supported by reasonable suspicion, and cites **Commonwealth v. Wimbush**, where the Supreme Court explained:

> An investigatory stop, which subjects a suspect to a stop and a period of detention but does not involve such coercive conditions as to constitute an arrest, requires a reasonable suspicion that criminal activity is afoot. **Terry v. Ohio**, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968); **Commonwealth v. Melendez**, 544 Pa. 323, 676 A.2d 226, 228–30 (1996). Reasonable suspicion depends upon both the content of the information possessed by the police and its degree of reliability. **Commonwealth v. Wilson**, 424 Pa.Super. 110, 115, 622 A.2d 293, 295–96 (1993) (quoting **Alabama v. White**, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990)). Thus, quantity and quality of information are considered when assessing the totality of the circumstances. **Id.** If information has a low degree of reliability, then more information is required to establish reasonable suspicion. **Id.**

**Commonwealth v. Wimbush**, 750 A.2d 807, 811 (Pa. 2000).

In its opinion, the PCRA court, who also sat as the suppression court, states that Appellant was not prejudiced by his plea, noting that Appellant "voluntarily consented to the searches" and "there was no prejudice because any challenge on appeal would not have been successful." PCRA Court

- 15 -

Opinion, 9/7/16, at 3. Again, we are constrained to disagree with the PCRA court's determination that a hearing on this issue was not warranted. The record confirms Appellant's assertion that his counsel failed to "fully litigate" and "really delve into the reliability of the tip and the circumstances under which it was received." Appellant's Brief at 23, 25. The parties and court agreed that the initial encounter at the train station constituted an investigatory detention, which must be supported by reasonable suspicion. The court stated its view that the confidential informant "wasn't reliable enough," but also, inconsistently, stated its agreement with the Commonwealth that there was reasonable suspicion to justify the investigation. The court stated this conclusion on a record that lacked other evidence to support a finding of reasonable suspicion. Therefore, we cannot agree with the PCRA court that Appellant was not prejudiced because "any challenge on appeal would not have been successful." PCRA Court Opinion, 9/8/16, at 3.

\* \* \*

The purpose of the PCRA is to bring finality to criminal judgments while allowing criminal defendants a fair opportunity to address, and seek redress for, errors that occurred during trial and/or sentencing. *Commonwealth v. Grafton*, 928 A.2d 1112, 1114 (Pa. Super. 2007) (citation omitted). Here, Appellant was not afforded a hearing on his PCRA petition, yet there are factual issues which must be resolved in order to

assess whether Appellant's guilty plea was knowing and intelligent in light of his counsel's representation. An evidentiary hearing in this case is warranted so that Appellant may have a fair and full opportunity to address his two claims of trial counsel's ineffectiveness. We therefore reverse the PCRA court's order denying Appellant's petition for post-conviction relief and remand for an evidentiary hearing, at which the parties shall address all three prongs of the ineffective assistance test stated in **Fulton**.

Order reversed. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/18/2017