J-S02020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAFAEL VAZQUEZ | : | |
| | : | |
| Appellant | : | No. 2803 EDA 2016 |

Appeal from the Judgment of Sentence November 8, 2013
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003302-2012

BEFORE:    BOWES, J., NICHOLS, J., and RANSOM, J.[*]

MEMORANDUM BY NICHOLS, J.:                          **FILED APRIL 24, 2018**

Appellant Rafael Vazquez appeals *nunc pro tunc* from the judgment of sentence following his conviction for three violations of the Uniform Firearms Act (VUFA).[1]  Appellant claims that the trial court erred in denying his pre-trial motion to suppress.  We affirm.

We state the relevant facts and procedural history from the suppression hearing as follows.  On February 27, 2012, at approximately 5:45 p.m., Philadelphia Police Officers Jason Czarnecki and Gerry Rahill were on routine patrol in a high-crime area of Philadelphia.  After they observed a vehicle disregard a stop sign, the officers initiated a traffic stop for violations of the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6105, 6106, and 6108.

Motor Vehicle Code.[2] As the officers approached, they observed that the windows of the vehicle were heavily tinted. N.T., 4/11/13, at 6. As a result, they were unable to ascertain how many people were inside of the vehicle or where they were seated. *Id.* at 8.

Officer Rahill proceeded to the driver's side of the vehicle, and Officer Czarnecki approached the passenger side of the vehicle. Officer Rahill observed that the driver's window was "cracked a couple of inches." *Id.* at 29. Because the windows were so heavily tinted, he asked the driver to fully lower the windows in order to ensure officer safety. *Id.* The driver replied that he could not roll down the windows because they were broken. *Id.* Through the only opening at the top of the front window, Officer Rahill observed the driver making some type of movement toward his feet and could not see the driver's hands. *Id.* at 31. Additionally, he noted that the driver appeared to be shaky and nervous. *Id.* At that time, Officer Rahill signaled to his partner, and informed the driver that they were going to open the vehicle doors, which they then proceeded to do. *Id.* at 29.

Officer Czarnecki made similar observations about his inability to see through the heavily tinted windows:

> [Officer Czarnecki]: I couldn't see into the car, and I couldn't hear anything. And there were motions around, and I just don't like when I can't see in the car. I think it's a safety issue for me.

---

[2] The driver of the vehicle was issued traffic citations for disregarding a stop sign, 75 Pa.C.S. § 3323(b); and window obstruction, 75 Pa.C.S. § 4524(e).

The court: And what's the reason?

[Officer Czarnecki]: In case there's a gun in the car. There could have been a gun pointed right at me, and I would have no idea.

The court: It was that opaque that you couldn't see anything at all?

[Officer Czarnecki]: Yes.

N.T., 4/11/13, at 16-17.

After the doors were opened, Officer Czarnecki began speaking with Appellant, who was seated on the rear passenger side of the vehicle.[3] *Id.* at 10. During the exchange, Officer Czarnecki observed a bulge in Appellant's waistband near his right hip. *Id.* When Officer Czarnecki asked Appellant about the bulge, Appellant replied "it's nothing." *Id.* Appellant then attempted to cover the bulge with his hands and a soda bottle. Officer Czarnecki testified that he became increasingly concerned for his safety, as Appellant appeared nervous in his efforts to cover his waistband area. *Id.* at 12. He further testified that firearms are routinely concealed on a person's waistband and that he had personally recovered firearms from that area "between five and ten [times] over the course of a couple of years." *Id.* at 12.

At that point, Officer Czarnecki asked Appellant to step out of the vehicle, place his hands on the hood, and spread his feet so that the officer could frisk him. *Id.* at 14. Appellant initially complied, but then pressed his

---

[3] The record does not detail the verbal exchange.

right hip against the vehicle. *Id.* Officer Czarnecki pulled Appellant away from the vehicle, but Appellant pressed his body against the vehicle again. *Id.* Officer Czarnecki unsuccessfully ordered Appellant to step away from the vehicle. *Id.* The officer eventually recovered a firearm from Appellant's waistband. *Id.* As a result, Appellant was arrested and charged with three counts of VUFA.

On May 10, 2012, Appellant filed an omnibus pre-trial motion seeking to suppress the firearm. On April 11, 2013, the court held a suppression hearing, at which Appellant argued the unconstitutionality of the stop. Alternatively, he contended that even if the stop were valid, the officers did not have reasonable suspicion to order Appellant from the car or probable cause to effectuate a search. *Id.* at 59. The trial court denied the motion.

Following a bench trial on July 2, 2013, the court found Appellant guilty of all three counts of VUFA. On November 8, 2013, he was sentenced to five to ten years' incarceration, followed by five years' probation. No direct appeal was filed at that time.

On August 25, 2016, Appellant's direct appeal rights were reinstated *nunc pro tunc* following his successful petition under the Post Conviction Relief Act (PCRA).[4] On August 31, 2016, Appellant timely appealed and, on September 28, 2016, filed a court-ordered Pa.R.A.P. 1925(b) statement. Therein, Appellant alleged that (1) "[t]he trial court erred in failing to suppress

---

[4] 42 Pa.C.S. §§ 9541-9546.

the physical evidence, an alleged firearm, seized after an unlawful and unconstitutional car stop without reasonable suspicion and probable cause"; and (2) there was no reason to pull out all of the passengers and search them without any reasonable suspicion or probable cause. Appellant's 1925(b) Stmt., 9/28/16.

> Appellant raises one issue on appeal:
>
> Did the trial court err in denying the suppression motion of [A]ppellant when the police officer had no reasonable suspicion or probable cause to open the front and back passenger side doors of the vehicle?

Appellant's Brief at 2.[5]

Appellant does not dispute the validity of the traffic stop in this appeal. Instead, he focuses solely on the officers' opening of the vehicle doors, which he describes as "totally illegal and unconstitutional."  Appellant's Brief at 7. He reasons that opening the vehicle doors was unnecessary to effectuate the stop and issue the traffic citation.  **Id.**  Appellant asserts that neither he nor the other passenger did anything suspicious.  **Id.** at 6.  Thus, he argues the police lacked reasonable suspicion and probable cause to open the vehicle

---

[5] Appellant raised four issues in his 1925(b) statement, which the trial court addressed in its 1925(a) opinion. However, Appellant did not pursue the remaining issues in this appeal, so we need not address them. **Commonwealth v. Dunphy**, 20 A.3d 1215, 1218 (Pa. Super. 2011) (noting appellant abandoned issues raised in Rule 1925 statement that were not identified in the statement of questions presented section of his brief or developed in the argument section of his brief).

doors, and it was only because of that illegal action that the officer saw the alleged bulge. *Id.* at 7-8.[6]

In addressing a challenge to the denial of a suppression motion, our standard of review is

> limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

---

[6] We acknowledge that the Commonwealth contends that Appellant waived this argument by failing to raise it in his Rule 1925(b) statement or in his pre-trial motion to suppress. *See* Commonwealth's Brief at 8. It is well-settled that "appellate review of an order denying suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal." *Commonwealth v. Little*, 903 A.2d 1269, 1272–73 (Pa. Super 2006). Thus, "the failure to raise a suppression issue prior to trial precludes its litigation . . . on appeal." *Commonwealth v. Douglass*, 701 A.2d 1376, 1378 (Pa. Super. 1997). Here, the Commonwealth asserted that the police were more than justified in ordering the passengers out on the grounds of officer safety. N.T., 4/11/13, at 53-54. Appellant, however, countered that the police had no basis to search the vehicle based on the doors' tinted windows, *see, e.g.*, *id.* at 61, and thus, had no reason to open the doors. We are satisfied that Appellant raised substantially the same argument at the suppression hearing and in his 1925(b) statement. *See Little*, 903 A.2d at 1272-73. Accordingly, we decline to find waiver and will address the issue on its merits.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

***Commonwealth v. Ranson***, 103 A.3d 73, 76 (Pa. Super. 2014) (citations and quotations omitted).

In ***United States v. Stanfield***, 109 F.3d 976 (4th Cir. 1997), three police officers were on patrol in an unmarked patrol car in a high crime area of Baltimore when they observed a vehicle with heavily tinted windows illegally stopped in the middle of the street. ***Id.*** at 978.[7] After parking their car in front of the vehicle, the police observed the driver talking to a man leaning from a building's second-story window, who they recognized as a known drug dealer. ***Id.*** The driver's side window was rolled down, but the window on the passenger side remained closed. ***Id.*** However, because the tinting on the windows was so dark, the officers were unable to see inside the vehicle as they approached. ***Id.*** As a result, the officer on the passenger side of the vehicle opened the front passenger door in order to determine whether the

---

[7] "While we recognize that federal court decisions are not binding on this [C]ourt, we are able to adopt their analysis as it appeals to our reason. Further, [w]hile it is a truism that decisions of sister states are not binding precedent on this Court, they may be persuasive authority[.]" ***Commonwealth v. Arthur***, 62 A.3d 424, 429, n.9 (Pa. Super. 2013) (citations and internal quotations omitted). "Pennsylvania has consistently followed Fourth Amendment jurisprudence in stop and frisk cases." ***Commonwealth v. Wimbush***, 750 A.2d 807, 810 n.2 (Pa. 2000) (citing ***Commonwealth v. Jackson***, 698 A.2d 571, 574 (Pa. 1997); ***Commonwealth v. Melendez***, 676 A.2d 226, 230 (Pa. 1996)).

driver was armed, had access to weapons, and there were any passengers inside of the vehicle. *Id.*

After the officer opened the door, from his vantage point entirely outside of the SUV, he saw cocaine in plain view on the back seat. *Id.* at 979. The defendant moved to suppress, contending that the search as a result of the officer's "opening of the front passenger door was unconstitutional under the Fourth Amendment and, therefore, that the cocaine discovered as a consequence of that search must be suppressed." *Id.* The district court denied the motion, and the defendant appealed. *Id.*

The Fourth Circuit resolved the constitutionality of the intrusion:

In [*Pennsylvania v. Mimms*, 434 U.S. 106 (1977),] and *Maryland v. Wilson*, 519 U.S. 408, 117 S. Ct. 882, 137 L.Ed.2d 41 (1997), the [United States Supreme] Court . . . adopted bright-line rules that officers may, as a matter of course, order both drivers and passengers from vehicles during routine traffic stops in order to ensure that such stops are completed without incident.

\* \* \*

[W]e believe that the Court's decisions in *Mimms* and *Wilson* in particular would support a holding that whenever, during a lawful traffic stop, officers are required to approach a vehicle with windows so heavily tinted that they are unable to view the interior of the stopped vehicle, they may, when it appears in their experienced judgment prudent to do so, open at least one of the vehicle's doors and, without crossing the plane of the vehicle, visually inspect its interior in order to ascertain whether the driver is armed, whether he has access to weapons, or whether there are other occupants of the vehicle who might pose a danger to the officers.

\* \* \*

But, apart from the fact that there is a considerably reduced privacy interest in a vehicle's interior passenger compartment as a matter of law, the driver and other occupants of a lawfully stopped vehicle have already had their liberty curtailed. Moreover, because the driver must comply with routine requests for identification and registration, he will be required at some point during the brief detention to expose the interior compartment of his vehicle to view through at least one window, if for no other reason than to interact with the officer. Of course, when the driver lowers the window, then much if not all of the car's interior will be visible to the officer. The additional interference with the occupants' privacy interests affected by the opening of one of the vehicle's doors would seem minimal when measured against the enormous danger law enforcement officers face when they approach a vehicle with heavily tinted windows. Such an intrusion would seem considerably less than the intrusions affected by ordering the driver and passengers to exit the vehicle and to proceed to the shoulder of the road, which were held in **Mimms** and **Wilson**, respectively, to be "*de minimis*" in comparison to the states' interests in protecting their law enforcement personnel under circumstances far less inherently dangerous than those existing when the stopped vehicle has heavily tinted windows. Not only does the person subjected to the limited search entailed in the opening of the vehicle door not have his entire body exposed to the view of the officers and public, he also retains his liberty interest in remaining seated in his automobile during the duration of the detention. Indeed, the actual invasion of privacy entailed in an officer's opening of the vehicle door is indistinguishable from, if not precisely the same as, that which occurs when an occupant is required to open a door to exit a vehicle pursuant to an order given under the authority of **Mimms** or **Wilson**.

**Stanfield**, 109 F.3d at 980-83; **see also United States v. Holmes**, 376 F.3d 270, 281 (4th Cir. 2004) (citing to **Stanfield** in holding that in light of officers' reasonable fears during roadside encounters with dangerous suspects, "we do not require[] that officers adopt alternate means to ensure their safety in order to avoid the intrusion involved in a **Terry**[8] encounter, and, where

---

[8] **Terry v. Ohio**, 392 U.S. 1 (1968).

certain law enforcement tactics are themselves legitimate under the circumstances, we hesitate to impose [reasonable alternatives] on the law enforcement community as a matter of constitutional law" (internal citations and quotations omitted)); *cf. Commonwealth v. Cartagena*, 63 A.3d 294 (Pa. Super. 2013) (discussing *Stanfield*, noting that reasonable suspicion requires a totality of the circumstances analysis, in which tinted windows are merely a factor).

We find *Stanfield* controls the instant case. Both matters arose when officers conducted a lawful traffic stop. *Stanfield*, 109 F.3d at 984. Both stops also occurred in high crime areas and involved vehicles with heavily tinted windows. *Id.* at 978; N.T., 4/11/13, at 8, 15. Here, after the vehicle was stopped, Officer Rahill observed the driver making movements toward his feet and further noted that he was unable to see the driver's hands. N.T., 4/11/13, at 31. Officer Rahill initially instructed the driver to lower the windows, but was told that they were broken. *Id.* at 29. As in *Stanfield*, at least one of the windows was partially open. *Stanfield*, 109 F.3d at 978; N.T., 4/11/13, at 29. Despite these efforts, the officers were still unable to ascertain who or what was inside of the car. *Stanfield*, 109 F.3d at 978; N.T., 4/11/13 at 8. The officers, like the police in *Stanfield*, testified to specific and articulable facts leading them to believe they were concerned for their safety. *Stanfield*, 109 F.3d at 979; N.T., 4/11/13 at 9. In response, the police—identical to *Stanfield*—opened the passenger side doors to ensure at least some degree of safety. N.T., 4/11/13 at 9. Because the

uncontradicted record supports the factual determinations of the trial court and we discern no error of law, we affirm the denial of the motion to suppress. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/24/18